

**FILED**

*1:00 pm, 2/16/23*

**Margaret Botkins**
**Clerk of Court**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

---

MOTAMOA HOLDINGS LIMITED,

        Plaintiff,

vs.

VL MEDIA LLC, ILYA
SHEVCHENKO, and VITALII SOSKOV,

        Defendants.

Case No.  21-CV-198-NDF

---

## ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT

The Clerk entered default against Defendant VL Media LLC ("VL Media" or "Magicbird") on January 14, 2022 after the Defendant was served and failed to answer or otherwise defend against the Complaint by Plaintiff Motamoa Holdings Limited ("Motamoa" or "Metalbird").  ECF 11.  The Plaintiff now moves for default judgment against VL Media under Federal Rule of Civil Procedure 55(b)(2).[1]  ECF 34.  For the reasons below, the motion is GRANTED in part.

I.    *Background Facts*

The Court takes the following facts from Plaintiff's complaint, ECF 1.

    a.    *Facts Regarding Plaintiff Motamoa*

---

[1] This motion does not seek default judgment against Vitalii Soskov or Ilya Shevchenko who are also defendants in this case.  For purposes of this Order, "Defendant" refers only to VL Media.

Plaintiff Motamoa is a New Zealand limited company with its principal place of business in New Zealand.  Since 2009, Plaintiff Motamoa, doing business as Metalbird under the Metalbird trademark, ("METALBIRD Mark"), has sold lifelike two-dimensional metal silhouette sculptures of birds that can be affixed to a post or tree by hammering-in part of the sculpture itself.  Motamoa has invested substantial time and effort in creating and protecting these unique handcrafted designs.  As a result, these proprietary designs are recognizable and identify Metalbird as the source of these distinctive designs.

Since 2016, Metalbird has generated substantial revenue and product sales in the United States, which support that the Metalbird name is distinctive in the marketplace.  Moreover, customers associated with the products indicate Metalbird as the source.  The extensive use and advertising of the METALBIRD Mark has resulted in public recognition that Metalbird is the source of well-known and high-quality artwork and retail services.

Plaintiff maintains internet websites at domain names incorporating its METALBIRD Mark.  The domain name www.metalbird.com ("Metalbird Website") was originally registered in 2004 and has been owned by Metalbird and its licensees and predecessors since 2016.  The Metalbird Website currently offers the following beautifully crafted works of art and sculptures (among others): *Hummingbird, Cardinal, Chickadees & Chicks, Bird Feeder, Hummingbird Honeys, Great Horned Owl, Kissing Cardinals, Woodpecker, Bald Eagle, Pair of Swallows, House Finch, Chickadee, Blue Jay, Nuthatch, Wren, Road Runner, Peregrine Falcon, Crow, Pelican, Mockingbird, Belted Kingfisher, Puffin, Fantail, Bat and Turkey* ("Metalbird Works of Art").

Metalbird's social media accounts prominently feature the Metalbird brand.   To distinguish itself from its Metalbird locations outside of the United States, Metalbird uses the designation Metalbird USA on its primary social media accounts.

On or around November 2019, Glass Elephant, Metalbird's digital ad agency, and Vitalii Soskov helped create a video for Metalbird that prominently featured the Metalbird name and was used to showcase and promote Metalbird and its products to the United States marketplace ("Metalbird Hero Ad").   The Metalbird Hero Ad is wholly original and owned exclusively by Metalbird.

Metalbird uses the METALBIRD Mark and designs in advertising, marketing, and promotional materials on a nationwide basis through various media, including but not limited to, the internet, print, radio, tradeshows, PR, transit media and influencer marketing.   The success of Metalbird's Works of Art is due, in part, to the extensive promotion and advertising it has undertaken for the METALBIRD Mark and designs. Metalbird annually spends in excess of several million United States dollars on advertising, marketing and promotional efforts for the METALBIRD Mark and designs.   The METALBIRD Mark and designs are assets of incalculable value and identifiers of Metalbird's goods and services, and goodwill.

The Metalbird Works of Art and the Metalbird Website, which is a compilation, are wholly original.   In 2021, Motamoa applied for, and was granted, copyright registrations for the Metalbird Website and certain Metalbird Works of Art.

b.  *Facts Regarding Defendant VL Media*

Vitalii Soskov is a Russian citizen that previously resided in New Zealand and is believed to reside in Turkey.  Beginning in September 2019 until sometime in March 2021, Soskov worked for Glass Elephant, a digital ad agency based in New Zealand.  As part of his job responsibilities, Soskov was the creative lead and managed all digital advertising for Metalbird, including creating and designing ads, and their placement.  Soskov left his position at Glass Elephant in March 2021.

Ilya Shevchenko claims to own VL Media, which does business as Magicbird, and resides in Auckland, New Zealand.  Soskov and Shevchenko manage and direct VL Media's conduct at issue in this case.

On March 18, 2021, the entity VL Media LLC was organized with the State of Wyoming and has an address in Sheridan, Wyoming.  The State of Wyoming records do not identify any of the LLC members.

On or around August 2021, Defendant launched the Magicbird e-commerce website offering for sale bird silhouettes and works of art ("Magicbird Website").  Defendant sells the bird silhouettes to customers in the United States and around the world and the Magicbird Website allows customers to select their language and currency, such as United States dollars.

Magicbird's website currently offers multiple designs and works of art, including but not limited to, *Hummingbird, Pair of Robins, Pair of Swallows, Pair of Sparrows, Blue Tit, Crested Tit, Blackbird, Nuthatch, European Robin, Eagle, and Woodpecker.*

4

On or around September or October 2021, Defendant launched a Facebook video that copied several core elements of Plaintiff's Metalbird Hero Ad.  Metalbird did not authorize or license to Magicbird use of the Metalbird Hero Ad.

On or around October 2021, Defendant launched a Facebook ad and video that included a child holding Plaintiff's package that prominently featured METALBIRD Mark.  As part of the advertisement, Magicbird added the comment "Opening a Magicbird box is an experience for the whole family!"  Defendant subsequently removed the infringing ad from Facebook after discussions with Metalbird.

Defendant had actual knowledge of Metalbird's use and prior rights because Soskov had direct responsibility for Metalbird's digital advertising creation and strategy. Defendant has had actual notice of Metalbird's claims and rights since mid-October 2021 and continued with their infringing conduct since that date.

II.     *Analysis*

A.      *Subject-Matter and Personal Jurisdiction*

The Court must have both personal and subject matter jurisdiction to enter a valid judgment.  *See Williams v. Life Savings and Loan,* 802 F.2d 1200, 1202-03 (10th Cir. 1986).  The Court has federal question subject matter jurisdiction over Plaintiff's claims for copyright infringement under 17 U.S.C § 101 *et seq.* and claims for trademark infringement and unfair competition under the Lanham Act 15 U.S.C. § 1125.  *See* 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over Plaintiff's claim of unfair competition under Wyoming common law.  *See* 28 U.S.C. § 1367.

Plaintiff Motamoa alleges that Defendant VL Media is a Wyoming limited liability company with its principal place of business at 30 N Gould St. Ste R, Sheridan, Wyoming 82801.  ECF 1, ¶4.  For corporations, "the place of incorporation and principal place of business are 'paradig[m]. . . bases for general jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citation omitted).  "Courts have held that *Daimler* applies with equal force to limited liability companies." *Warming Trends, LLC v. Flame Designz, LLC*, No. 22-cv-00252-PAB-STV, 2023 U.S. Dist. LEXIS 7764, at *10 (D. Colo. Jan. 17, 2023) (quoting *Bliss v. Change Healthcare Operations LLC*, 2021 U.S. Dist. LEXIS 33412, 2021 WL 706770, at *1 (W.D. Okla. Feb. 23, 2021) (collecting cases)).  Chief Judge Skavdahl's thorough analysis in *Avus Designs, Inc. v. Grexxx, LLC*, explains that, even though LLCs are citizens of their members' states for purposes of diversity jurisdiction, they are citizens of their incorporation states for purposes of general personal jurisdiction.  *Avus Designs, Inc., v. Grexxx, LLC*, No. 22-CV-0173-SWS, 2022 U.S. Dist. LEXIS 218066, at *19 (D. Wyo. Dec 2, 2022).  Thus, the Court has general personal jurisdiction over VL Media because it is a Wyoming LLC with a primary place of business in Wyoming.  *See Daimler*, 571 U.S. at 137*; Warming Trends, LLC*, 2023 U.S. Dist. LEXIS 7764, at *10.

Personal jurisdiction also requires proper service of the Defendant.  *Okla. Radio Assocs. v. Fed. Deposit Ins. Corp*., 969 F.2d 940, 943 (10th Cir. 1992).  Federal Rule of Civil Procedure 4(h) provides that service on a corporation, partnership, or association is adequate if effected "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B).  Here, the Complaint and

summons were delivered to Registered Agents Inc. at 30 N. Gould St., Sheridan, WY on

11/2/21.  ECF 5.  According to the Wyoming Secretary of State, Registered Agents Inc. is

VL Media's registered agent.  The Court therefore finds service of process was appropriate.

### B.    Legal Standards for Default Judgment

According to Federal Rule of Civil Procedure 55(a), before obtaining a default

judgment, the party seeking relief must show by affidavit or otherwise prove that the party

against whom judgment is sought failed to plead or defend against the party's complaint.

*Cunningham v. Technologic United States*, No. 19-CV-00231-F, 2020 U.S. Dist. LEXIS

257373, at *4 (D. Wyo. June 17, 2020).  If the party meets these criteria, "the clerk must

enter the party's default."  *Id.*  The Clerk entered default against VL Media on January 14,

2022 on Plaintiff's motion.  ECF 10, 11.

Once default is entered in accordance with Rule 55, the party is free to seek a default

judgment.  Fed. R. Civ. P. 55(b).  The Clerk of the Court is responsible for entering a

default judgment.  *Id*.  The Clerk must enter a default judgment "if the Plaintiff's claim is

for a sum certain or a sum that can be made certain by computation" in the amount verified

by the Plaintiff as long as "defendant who has been defaulted for not appearing . . . is

neither a minor nor an incompetent person."  Fed. R. Civ. P. 55(b)(1).  If a party is unable

to prove the certainty of the sum of their claim pursuant to Rule 55(b)(1), the party must

file a motion with the court requesting a default judgment.  Fed. R. Civ. P. 55(b)(2).

Furthermore, "the court may conduct hearings or make referrals…when, to enter or

effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of

damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other

matter." *Id*.  Nonetheless, "decisions to enter judgment by default are committed to the district court's sound discretion." *Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp*., 115 F.3d 767, 771 (10th Cir. 1997).  "[A] court may enter a default judgment without a hearing only if the amount claimed is a liquidated sum or one capable of mathematical calculation." *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985).

In this case, Plaintiff seeks default judgment on its copyright claim and trademark claim.  Plaintiff seeks injunction under the copyright and trademark claims, but only seeks damages on the copyright claims.  ECF  34-1, pp. 9, 11-14.  Plaintiff seeks statutory damages under copyright law which are an amount capable of mathematical calculation. ECF 34 ¶ 8.C.  Plaintiff seeks default judgment for unfair competition under Wyoming common law, ECF 34 ¶ 8.A., but does not support that portion of the motion with argument and does not request a remedy under that claim.

"Upon the entry of default against a defendant, the well-pleaded allegations in the complaint are deemed admitted." *Richfield Hosp., Inc. v. Shubh Hotels Detroit, LLC,* No. 10-CV-00526-PAB-MJW, 2011 WL 3799031 (D. Colo. Aug. 26, 2011); *see Olcott v. Delaware Flood Co.,* 327 F.3d 1115, 1125 (10th Cir. 2003).  "It remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (citing 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2688, at 63 (3d ed. 1998); *Nishimatsu Constr. Co.,* 515 F.2d 1200, 1206-08 (5th Cir. 1975) (vacating district court's entry of default judgment because the pleadings were insufficient to support the judgment)).  Plaintiff's factual

allegations in this case are deemed admitted by Defendant based on the entry of default and must be accepted as true.

C.    *Plaintiff's Count I for Copyright Infringement under 17 U.S.C. § 101 et seq.*

1.    *Copyright Liability*

Count I alleges copyright infringement under *17 U.S.C. § 101 et seq.* ECF 1, ¶ 84. To establish copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Blehm v. Jacobs*, 702 F.3d 1193, 1199 (10th Cir. 2012).

Often, Plaintiffs satisfy the ownership element by producing a certificate of registration from the copyright office. *Craft Smith, Ltd. Liab. Co. v. EC Design, Ltd. Liab. Co.*, 969 F.3d 1092, 1099 (10th Cir. 2020) (citing *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 942 (10th Cir. 2002) (finding the first element satisfied by a "federally registered copyright" in the accused work)). *See also* 17 U.S.C. § 410(c) ("[i]n any judicial proceedings the certificate of a registration . . . shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate").

Plaintiff provided the following certificates of registration that satisfy the copyright ownership element:

| VA 2-256-057 | *Kissing Cardinals*: sculpture |
| VA 2-256-058 | *Valentine's Day Kissing Cardinals*: 2-D artwork, compilation of sculpture and photograph |
| VA 2-259-964 | *Hummingbird*: sculpture |
| VA 2-272-087 | *Woodpecker*: sculpture |
| VA 2-272-089 | *Blue Tit*: sculpture |
| VA 2-272-090 | *Pair of Swallows:* sculpture |
| VAu 1-434-775 | Metalbird Website: Photographs, 2-D artwork, new text, and compilation of text, photographs and graphics. |

ECF 1-6.  Plaintiff does not provide proof of copyright registration for the "Metalbird Hero Ad" or otherwise argue that the first copyright element is satisfied regarding the ad.  ECF 1-6; ECF 34.

The second element, copying of constituent elements of the work that are original, is itself comprised of two components.  First, the plaintiff must demonstrate factual copying.  *Craft Smith, Ltd. Liab. Co.*, 969 F.3d at 1101 (10th Cir. 2020) (citing *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1138 (10th Cir. 2016)).  The alleged facts easily establish the first component, factual copying, as Soskov, Plaintiff's former web designer is one of the parties alleged to have started VL Media to sell sculptures that resemble Plaintiff's sculptures.

However, "the mere fact that a work is copyrighted does not mean that every element of the work may be protected."  *Blehm*, 702 F.3d at 1196.  The second component of the copying element requires the showing "substantial similarity between the allegedly infringing work and the elements of the copyrighted work that are legally protected."  *Blehm*, 702 F.3d at 1199.  The Court first distills out the protected elements from the unprotected elements and then considers whether any of the protected elements are substantially similar to the accused work.  *See Savant Homes*, 809 F.3d at 1138 (citing *Blehm*, 702 F.3d at 1200).  "[I]n looking at . . . two works of art to determine whether they are substantially similar, focus must be on the similarity of the expression of an idea or fact, not on the similarity of the facts, ideas or concepts themselves.  *Blehm*, 702 F.3d at 1200 (10th Cir. 2012) (quoting *Rogers v. Koons*, 960 F.2d 301, 308 (2d Cir. 1992));

*Jacobsen*, 287 F.3d at 942.  The ultimate question is whether an "ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Blehm*, 702 F.3d at 1202 (10th Cir. 2012) (cleaned up) (citing *Country Kids*, 77 F.3d at 1288).

"In no case does copyright protection. . . extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b).  Applying this principle to the sculptures at issue, the concept or idea of a two-dimensional metal bird silhouettes is not protectable.  Moreover, the functional aspect of the sculpture, that the sculpture may be hammered into a tree or post for display, is similarly not protectable.  *See Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002 (2017) (explaining that pictorial, graphic or sculptural work is protectable to the extent it can be "imagined separately" from the useful aspect of the article).

Turning next to the subjects of the sculptures, courts in this circuit have followed the holding Ninth Circuit's holding in *Satava v. Lowry* that a copyright holder "may not prevent others from copying aspects of his [realistic wildlife] sculptures resulting from either [the animal's]-physiology or from [the animal's] depiction in the [particular artistic medium." 323 F.3d 805, 810 (9th Cir. 2003); *see Sportsmans Warehouse, Inc. v. Fair*, 576 F. Supp. 2d 1175, 1180-81 (D. Colo. 2008) ("[a]n accurate portrayal of something that exists in the world . . . cannot be copyrighted but original expressions of those facts and ideas receive 'thin' copyright protection, perhaps only from exact duplication by others") (holding that realistic sculptures of elk enjoyed thin copyright protection from exact

duplication, but not a "monopoly on portraying subjects that occur in nature or aspects of animals that naturally result from their physiology, behavior, or environment"); *see also Tomelleri v. Zazzle, Inc.,* No. 13-CV-02576-EFM-TJJ, 2015 U.S. Dist. LEXIS 165007, at *32 (D. Kan. Dec. 9, 2015) (silhouettes and line drawings did not violate "thin" protections for meticulously-realistic illustrations of fish because overlaying the silhouettes and line drawing on the Plaintiff's realistic illustrations demonstrated that any copying by the defendant was not exact).

Plaintiff's sculptures are lifelike two-dimensional metal silhouettes of realistic birds posing on branches that can be affixed to a post or tree by hammering-in part of the sculpture to a tree or post. The sculptures utilize cut-outs to outline the bird's general features. The Court finds that Plaintiff's sculptures are akin to the *Sportsman's Warehouse* elk sculptures and *Tomelleri* fish illustrations. The selection of birds, their poses, and their features are aspects of realistic portrayals of animals in natural settings that are entitled only to thin copyright protection from exact copy. Similarly, the cut-outs used to highlight each bird's features are also entitled to only thin protection because, although there is perhaps greater abstraction and artistry required in designing the cutouts, they ultimately serve to outline the birds' realistic features.

The Court finds that Plaintiff cannot establish copyright infringement for *Kissing Cardinals, Valentine's Day Kissing Cardinals¸ Woodpecker, or Blue Tit*. These sculptures, like the majority of Defendant's sculptures, are not exact copies of Plaintiff's copyrighted works and thus do not violate the thin copyright protection against exact copy that is afforded realistic sculptures of natural subjects. Even where Defendant has chosen the

same species as Plaintiff's copyrighted works, Defendant generally uses obviously different poses and different artistic cut-outs to highlight the birds' features.

However, the Court finds that Plaintiff can establish infringement for two copyrighted bird sculptures. Plaintiff's complaint includes pictures showing that the hummingbird used by Defendant as part of its Magicbird logo is substantially similar to Plaintiff's copyrighted *Hummingbird* sculpture registered at VA 2-259-964. The pose and silhouette appear identical, as do the detailed cutouts under the neck, the belly, and the tail. The cutouts of the wings show only a small difference in shape and are perhaps the only portion not exactly copied from Plaintiff's *Hummingbird*:



ECF 1, p 31. The overlay of Plaintiff's hummingbird over Defendant's logo demonstrates that the images are near exact duplicates except upon the closest inspection. And since copyright protections extend to the creation of derivative art, it makes no difference that Plaintiff's image is a two-dimensional sculpture while Defendant's is a two-dimensional logo. *See Palladium Music, Inc. v. EatSleepMusic*, Inc., 398 F.3d 1193, 1198-99 (10th Cir. 2005); 17 U.S.C. §106. Even considering the thin copyright protection available for realistic sculptures, an ordinary reasonable person could conclude that the Defendant

unlawfully appropriated the plaintiff's protectable expression in *Hummingbird*.  *See Blehm*, 702 F.3d at 1202 (10th Cir. 2012).

Plaintiff also includes examples of its copyrighted work *Pair of Swallows* and the purported copy by Defendant.  Accounting for the slightly different perspective of the photographs, the taller bird in each sculpture is nearly identical, except that the vertical median line demarking the swallow's wing extends higher on Plaintiff's sculpture and there is a small additional cutout in the tail of Defendant's sculpture.  The pose and silhouette appear identical as do the cutouts on the neck, wingtips, and tail.  Defendant's version adds an additional cutout in the tail.



ECF 1, p. 23.  The appearance of the photos in Plaintiff's brief makes it look like Plaintiff's sculpture is substantially shorter than Defendant's, but this reasonably appears to be an illusion of perspective or a result of an error maintaining proportions when drafting the complaint.  Another photo from Plaintiff's website shows the Plaintiff's *Pair of Swallows*

with perspective and proportions that highlight the similarity of Defendant's sculpture, although this view is from the opposite side:



ECF 1-1, p. 3.  As with *Hummingbird*, an ordinary reasonable person could conclude that Defendant copied the protectable expressive elements of Plaintiff's sculpture.

Plaintiff also seeks default judgment on infringement of the Metalbird Website.  The registered copyright includes photographs, two-dimensional artwork, new text, and compilation of text, photographs, and graphics.  ECF 1-6.  The Plaintiff's and Defendant's websites share generally similar layouts, color schemes, and overall structure, but in large part the Defendant's website shows meaningful variation from Plaintiff's website.  For instance, the photos and product descriptions are all different.  However, the Court finds that some of the text and graphics on Defendant's website support a finding of copyright infringement.  Plaintiff alleges that the Metalbird Website contains the following phrase:

> With the simple tap of a hammer, this beautifully crafted, iconic, life-like bird silhouette will transform your backyard, garden or environment into a work of art and put smiles on faces for years to come.

> ECF 1, ¶ 27.

The complaint then alleges that Defendant's website includes the following phrase:

With the simple tap of a hammer Magicbird has the ability to instantly transform your backyard, garden or environment into a small work of art, a beautiful focal point to enjoy for many years to come, and an interesting topic for discussion at your next get together.

ECF 1. ¶ 56.  Additionally, Plaintiff's website includes the following installation

instruction text and graphics:



ECF 1-1, p. 4.  While Defendant's website and packaging include:



ECF 1-8, pg. 33. Although there are differences, these excerpts are at least as similar as the competing passages in *Jacobsen,* 287 F.3d at 945 n.7 (10th Cir. 2002). In that case the Tenth Circuit found it plausible that a historical account infringed on the Plaintiff's autobiography when both described the same factual events using a few of the same words and phrases. *Id.*

For the reasons above, the Court finds that Plaintiff's complaint establishes that Defendant infringed on Plaintiff's copyright of *Pair of Swallows*, *Hummingbird*, and the Metalbird Website.

### 2.    *Copyright Damages*

Plaintiff seeks the maximum statutory damages for willful copyright infringement. ECF 34-1, p. 11. The Copyright Act provides a range of statutory damages for each infringed work "in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1); *see DP Creations, Ltd. Liab. Co. v. Lyn*, No. 2:22-cv-00200-BSJ, 2022 U.S. Dist. LEXIS 229314, at *5 (D. Utah Dec. 20, 2022). *See Walt Disney Co. v. Powell*, 897 F.2d 565, 569, 283 U.S. App. D.C. 111 (D.C. Cir. 1990) ("[a] single infringer of a single work is liable for a single amount . . . no matter how many acts of infringement are involved in the action and regardless of whether the acts were separate, isolated or occurred in a related series." (citation omitted)). If the infringement is willful, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

The Court first evaluates whether Defendant's infringement was willful. "Willfully," as used in § 504(c)(2), means "with knowledge that the defendant's conduct

constitutes copyright infringement." *Viper Nürburgring Record LLC v. Robbins Motor Co. LLC*, No. 5:18-cv-04025-HLT, 2019 U.S. Dist. LEXIS 152931, at *19 (D. Kan. Sep. 9, 2019) (citing 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.04[B][3][a]).   Most of Defendant's sculptures show sufficient novelty to avoid copyright liability, and the vast majority of Defendant's website shows some amount of creative variation from Plaintiff's copyrighted website.   Even the copying of *Pair of Swallows* shows that only one of the two birds was copied and that there was some minor modification to the copied bird.   Similarly, the website used varied phrases and graphics, even where text and graphics were sufficiently similar to establish default judgment. Considering Defendant's efforts to introduce novelty, Plaintiff has not established Defendant knew the conduct constituted copyright infringement, and the Court does not find that infringement of *Pair of Swallows* and the Metalbird Website was willful.

But *Hummingbird* is different.   Here Defendant not only copied Plaintiff's' *Hummingbird* with almost no variation, Defendant then used the copy as the defining graphic feature of its own logo.   That logo was visible on every page of Defendant's website and, as a result, Plaintiff's copyrighted work became a small part of every sale that Defendant made.   ECF 1-8.   The variation on *Hummingbird* was so imperceptible, and Defendant's use of *Hummingbird* was so pervasive and flagrant, that the Court finds that Defendant's copying of *Hummingbird* was willful.

Courts consider several factors in determining the amount of statutory damages, such as: "(i) the expenses saved and the profits reaped; (ii) the revenues lost by the plaintiff; (iii) the value of the copyright; (iv) the deterrent effect on others besides the defendant; (v)

whether the defendant's conduct was innocent or willful; (vi) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (vii) the potential for discouraging the defendant." *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc.*, 807 F.2d 1110, 1117 (2d Cir. 1986).

The Court agrees with the Plaintiff that it is impossible to ascertain evidence of Defendant VL Media's actual profits because Defendant has not participated in the litigation. For the same reason, it is impossible to determine the effects on Plaintiff's business. But although Defendant has provided no records to establish damages, Plaintiff has left the Court similarly in the dark, only stating that "Metalbird annually spends in excess of several million U.S. dollars on advertising, marketing and promotional efforts for the METALBIRD Mark and designs." Plaintiff has provided little financial context to aid the Court in understanding the magnitude of the harm.

In large part, Defendant appears to have borne the cost of creating different sculptures and a different website. Except for one bird in *Pair of Swallows* there was no infringement by the creation, production, and photography of Defendant's sculptures, which were authorized to legitimately compete with Plaintiff. The Court concludes that, to the extent that Plaintiff suffered lost sales, a significant portion of the lost sales would have been due to legitimate competition from Defendant's competing sculptures and not from the infringing conduct.

The Court also keeps in mind that copyright law only protects infringements in the United States, and Defendant's "magicbird.eu" website appears tailored to European audiences. *IMAPizza, LLC v. At Pizza, Ltd.*, 448 U.S. App. D.C. 231, 236, 965 F.3d 871,

876 (2020) (citing *Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1368 (Fed. Cir. 2008)).  For example, the Magicbird website has the suffix ".eu" and the United States is not among the forty European countries individually listed on the site for shipping.  The Court concludes that the majority of the harm has taken place outside of the Unites States and is not compensable under United States copyright law.

On the other hand, Defendant's conduct was brazen.  Exact copying of *Hummingbird* by Defendant, most likely by Plaintiff's former advertising designer Soskov, shows complete and willful disregard for the Plaintiff's rights.  As a result of the copying, Plaintiff's *Hummingbird* was used as Defendant's logo, appeared in every aspect of Defendant's marketing, and was intended to be viewed as part of Defendant's commercial identity.  Such copying should be emphatically deterred.

The Court finds that the appropriate damages in this case are based upon the difficulty of proving actual damages, the scope of VL Media's willful infringement, contempt for this Court and these proceedings, Plaintiff's decision to forego their attorneys' fees and costs, the harm caused to Plaintiff and the public at large by VL Media's conduct and the need to deter VL Media from engaging in such conduct in the future.  The Court finds that $10,000 each for the Website infringement and the *Pair of Swallows* infringement together with $150,000 for the hummingbird infringement is just and appropriate in this case, for a total of $170,000 in damages.

3.    *Copyright Injunction*

The Copyright Act provides that "[a]ny court having jurisdiction of a civil action arising under this title may . . .  grant temporary and final injunctions on such terms as it

may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C.

§ 502(a).  However, "an injunction [does not] automatically follow[] a determination that

a copyright has been infringed."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006).

"An injunction should issue only where the intervention of a court of equity is essential in

order effectually to protect property rights against injuries otherwise irremediable."

*Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

For an injunction, the plaintiff must establish (1) actual success on the merits; (2)

irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the

harm that the injunction may cause the opposing party; and (4) the injunction, if issued,

will not adversely affect the public interest.  *Sw. Stainless, LP v. Sappington*, 582 F.3d

1176, 1191 (10th Cir. 2009) (citation omitted). "A copyright holder that establishes past

infringement and a substantial likelihood of infringement in the future is normally entitled

to a permanent injunction against the infringer pursuant to § 502(a)."  *DP Creations, Ltd.*

*Liab. Co. v. Lyn*, 2022 U.S. Dist. LEXIS 229314, at *9 (citing *Harolds Stores, Inc. v.*

*Dillard Dep't Stores, Inc*., 82 F.3d 1533, 1555 (10th Cir. 1996)).

Although the Plaintiff has succeeded on the merits, Plaintiff has not shown likely

harm in the future or that irreparable harm is likely without an injunction.  At the status

conference the Plaintiff indicated that the offending Magicbird website was not currently

working and the Court takes judicial notice that the Magicbird.eu website is presently not

working.[2]  There is little indication that Defendant is still infringing or will infringe in the

---

[2] Under Federal Rule of Evidence 201(b), "The court may judicially notice a fact that is not subject to reasonable
dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and

future.  The Court finds that, under the copyright claim, the Plaintiff is not entitled to a permanent injunction.

   D.    *Plaintiff's Count II for Federal Trademark Infringement and Unfair Competition under the Lanham Act, 15 U.S.C. 1125(a)*

   1.    *Trademark Liability*

Count II alleges trademark infringement and unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  To make out a claim under § 43(a) for an unregistered mark, the plaintiff must prove: (1) the identifying mark is inherently distinctive or has acquired distinctiveness through secondary meaning, (2) the mark is nonfunctional, and (3) the competitor's alleged violation of the plaintiff's rights in its mark is likely to cause consumer confusion.  *Forney Indus. v. Daco of Mo., Inc*., 835 F.3d 1238, 1244 (10th Cir. 2016) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 769 (1992).  "Secondary meaning exists only if most consumers have come to think of the word as not descriptive at all but as the name of the product [or service]." *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1218 (10th Cir. 2004).  A plaintiff may establish secondary meaning by direct evidence, which includes either customer surveys or testimony, or by circumstantial evidence regarding: (1) the length and manner of its use, (2) the nature and extent of advertising and promotion of the mark and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between the name or mark and a particular product or venture.

---

readily determined from sources whose accuracy cannot reasonably be questioned." *See O'Toole v. Northrop Grumman Corp*., 499 F.3d 1218, 1225 (10th Cir. 2007).

In assessing the third element, whether the alleged violation is likely to cause confusion, the court considers the following non-exhaustive factors: (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting its mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks. *Affliction Holdings, LLC v. Utah Vap or Smoke*, LLC, 935 F.3d 1112, 1115 (10th Cir. 2019) (citing *Sally Beauty Co. v. Beautyco, Inc*., 304 F.3d 964, 972 (10th Cir. 2002)). "These factors are interrelated and no one factor is dispositive." *Id.* But the degree of similarity is the most important factor. *Id. (citing Ornady Mfg., Inc. v. Doubletap, Inc*., 746 F.3d 995, 1001 (10th Cir. 2014)). "A lower degree of similarity is required when the marks are placed on closely related goods." *See Nautilus Grp., Inc*., 372 F.3d at 1345."

Plaintiff's pleading adequately shows that Plaintiff's extensive use and promotion of the METALBIRD trademark is protectable and that Defendant made an advertisement that used Plaintiff's METALBIRD trademark.  Defendant's advertisement included a picture of a child holding Plaintiff's package that conspicuously featured Plaintiff's METALBIRD Mark:



ECF. 1, p. 29.  The Court finds that such use of Plaintiff's mark to sell the same kind of

sculpture is likely to cause confusion and therefore establishes infringement under the

Lanham act.[3]

---

[3] Plaintiff does not argue, and the Court therefore does not find, that VL Media's use of the name "Magicbird" is a trademark infringement of Plaintiff's METALBIRD Mark.

2.    *Trademark Injunction*

For an injunction, the plaintiff must establish (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest. *Sw. Stainless, LP v.* 582 F.3d at 1191.

The Tenth Circuit has held that "[c]ourts may presume irreparable harm only when a party is seeking an injunction under a statute that mandates injunctive relief as a remedy for a violation of the statute." *Plasmacam, Inc. v. Worden,* No. 18-cv-02075-PAB-KMT, 2020 U.S. Dist. LEXIS 37790, at *13 (D. Colo. Mar. 4, 2020) (quoting *First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1140 (10th Cir. 2017)).   In 2020, "Congress amended the Lanham Act to expressly allow a presumption of irreparable injury" upon finding of a violation or upon a finding of likelihood of success on the merits. *See Trial Laws. Coll. v. Gerry Spence Trial Laws. Coll.*, 23 F.4th 1262, 1270 (10th Cir. 2022) (citing Trademark Modernization Act of 2020, Pub. L. 116-260, § 226(a), 134 Stat. 2200, 2208 (codified at 15 U.S.C. § 1116(a) (2020))).   Thus, for the claim of Trademark infringement, Plaintiff is entitled to a presumption of irreparable injury.

The first two injunction elements are met by the default judgment and the statutory presumption of irreparable harm.   As to the third element, there is no hardship to defendant because a permanent injunction "will merely prevent Defendant[] from engaging in further unlawful activity." *DP Creations, LLC v. Reborn Baby Mart*, No. 2:21-cv-00574-JNP, 2022 U.S. Dist. LEXIS 139585, at *24 (D. Utah Aug. 3, 2022).   Further, prohibiting Defendant from violating trademark law will not adversely affect the public interest.

Accordingly,  the Court finds that a permanent injunction is appropriate, and pursuant to Federal Rule of Civil Procedure 65(d)(2)(A) the Court will extend the injunction to the Defendant, the Defendant's officers, agents, servants, employees, attorneys and others "in active concert or participation with" the Defendant.  Fed. R. Civ. P.  65(d)(2)(A).

     E.    *Plaintiff's Count III for Unfair Competition under Wyoming Common Law*

Plaintiff seeks default judgment for unfair competition under Wyoming common law but does not support that portion of the motion with argument and does not request a Wyoming common law remedy.  ECF 34 ¶ 8.A.  The Court denies this portion of the motion.

III.    *Conclusion*

For the reasons above, Plaintiff's Motion for Default Judgment, ECF 34, is GRANTED in part.

IT IS HEREBY ORDERED:

1.  Plaintiff's motion for default judgment on Count I for copyright infringement under 17 U.S.C. § 101 et seq. against Defendant VL Media is GRANTED in part.  Plaintiff is awarded $170,000 on Count I.  Plaintiff's claim for a permanent injunction under the Copyright Act is denied.

2.  Plaintiff's motion for default judgment on Count II for federal trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a) against Defendant VL Media is GRANTED.  Plaintiff is entitled to injunctive relief on Count II as ordered below.

3.  Plaintiff's motion for default judgment on Count III for unfair competition under Wyoming common law against Defendant VL Media is unsupported by argument and is DENIED.

IT IS FURTHER ORDERED:

1.  That VL Media LLC and its officers, directors, agents, servants, employees, affiliates, successors, shareholders, assigns and attorneys, as well as all those in active concert or participation with them, (collectively, "VL Media") be preliminarily and permanently enjoined and restrained from:

A.  Using the METALBIRD Mark or any reproduction, counterfeit, copy, or colorable imitation thereof in any manner in connection with the sale, offering for sale, distribution, or advertising of any goods or services;

B.  Using any name, mark, or domain name that wholly incorporates the METALBIRD Mark or is confusingly similar to, including but not limited to any reproduction, counterfeit, copy or a colorable imitation of, the METALBIRD Mark;

C.  Registering, transferring, selling, owning or exercising control over any domain name that incorporates, in whole or in part, the METALBIRD Mark or anything confusingly similar thereto;

D.  Doing any other act or thing calculated or likely to induce or cause confusion or the mistaken belief that VL Media is in any way affiliated, connected, or associated with Plaintiff or its goods and services;

E.  Licensing or authorizing others to use the METALBIRD Mark or any confusingly similar mark;

F. Injuring Metalbird's business reputation and the goodwill associated with the METALBIRD Mark,

G. Passing off VL Media's goods or services as those of Metalbird.

2.   That VL Media be required to deliver up and destroy all products, labels, signs, packages, wrappers, advertisements, promotions, and all other matter in the custody or under the control of VL Media that bear the METALBIRD Mark or any other mark or trade dress that is likely to be confused with the METALBIRD Mark.


SO ORDERED this 16th day of February, 2023.

_____
NANCY D. FREUDENTHAL
UNITED STATES SENIOR DISTRICT JUDGE